Ellisen S. Turner (SBN #224842)
ellisen.turner@kirkland.com
Joshua Glucoft (SBN #301249)
josh.glucoft@kirkland.com
Kevin X. Wang (SBN #318024)
kevin.wang@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, 37th Floor
Los Angeles, CA 90067
Tel: (310) 552-4200
Fax: (310) 552-5900

*[Additional counsel listed on signature page]*

Attorneys for Defendants
*Meta Platforms Inc. and WhatsApp LLC*

Matthias A. Kamber (SBN #232147)
matthiaskamber@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Tel:  (415) 856-7000
Fax: (415) 856-7100

Robert W. Unikel (*pro hac vice*)
robertunikel@paulhastings.com
PAUL HASTINGS LLP
71 S. Wacker Drive, Suite 4500
Chicago, Illinois 60606
Tel: (312) 499-6000
Fax: (312) 499-6100

*[Additional counsel listed on signature page]*

Attorneys for Defendant
*Google LLC*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| VOIP-PAL.COM, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>META PLATFORMS INC., et. al.,<br><br>Defendants. | Case No. 3:22-cv-004279-JD |
| VOIP-PAL.COM, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.: 3:22-cv-05419-JD |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

Date: April 13, 2023
Time: 10:00 a.m.
Place: Courtroom 11, 19th Floor
Judge: The Hon. James Donato

**<u>TABLE OF CONTENTS</u>**

I.    **VoIP-Pal is estopped from challenging ineligibility**..................................................... 1

II.   **The asserted claims are patent-ineligible under Section 101** ..................................... 3

     A.    *Alice* step one: Claim 1 is directed to the abstract idea of routing a communication based on the participants' characteristics............................................ 3

         1.    Claim 1 uses broad, functional terms...................................................... 3

         2.    Claim 1 is analogous to preexisting call routing practices. ............................ 4

         3.    Claim 1 uses only known technology to perform routine functions................. 5

     B.    *Alice* step two: Claim 1 lacks an inventive concept...................................................... 5

     C.    Claim 1 is representative and no other asserted claim is patent-eligible. ..................... 7

III.  **Dismissal with prejudice is appropriate** ........................................................................ 10

IV.   **Conclusion** ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
890 F.3d 1354 (Fed. Cir. 2018)................................................................6

*Biovail Cor. v. Andrx Pharms.*,
239 F.3d 1297 (Fed. Cir. 2001)................................................................6

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018)................................................................3

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
754 F. App'x 996 (Fed. Cir. 2018) .......................................................10

*Hakopian v. Mukasey*,
551 F.3d 843 (9th Cir. 2008) ...................................................................4

*Intellectual Ventures I LLC v. Capital One Financial Corporation*,
850 F.3d 1332 (Fed. Cir. 2017)................................................................7

*Michaels of Or. v. Clean Gun*,
No. Civ–01–1158, 2002 WL 31496414 (D. Or. July 9, 2002) ................8

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017)................................................................8

*Stormborn Techs., LLC v. Topcon Position Sys.*,
444 F. Supp. 3d 1119 (N.D. Cal. 2020) ..................................................3

*Symantec Corp. v. Zscaler, Inc.*,
No. 17-cv-04426-JST, 2018 WL 1456678 (N.D. Cal. Mar. 23, 2018)......8

*Twilio, Inc. v. Telesign Corp.*,
249 F. Supp. 3d 1123 (N.D. Cal. 2017) ..................................................9

*VoIP-Pal.com, Inc. v. Apple Inc.*,
411 F. Supp. 3d 926 (N.D. Cal. 2019) ...........................................*passim*

*Voip-Pal.com, Inc. v. Apple, Inc.*,
828 F. App'x 717 (Fed. Cir. 2020) ..........................................................4

*Yakima Valley Mem'l Hosp. v. Wash. State Dept. of Health*,
654 F.3d 919 (9th Cir. 2011) ...................................................................2

*Yeda R&D v. Imclone Sys.*,
443 F. Supp. 2d 570 (S.D.N.Y. 2006) .....................................................8

**Other Authorities**

U.S. Patent No. 9,826,002.................................................................................................1, 2, 5, 7

U.S. Patent No. 10,218,606............................................................................................ *passim*

# I.       VOIP-PAL IS ESTOPPED FROM CHALLENGING INELIGIBILITY

VoIP-Pal does not contest that three of the four estoppel elements apply. The only disputed question is whether the minor wording differences between the previously invalidated '002 patent and the related '606 patent now at issue materially alter the validity question. As a matter of law, they do not. As Defendants demonstrated, including with highlighted claim language illustrating the overlap, the claims are substantially the same and describe the same abstract concept of routing communications based on participant characteristics. *See* Mot. at 4–5, Appx. 1.

VoIP-Pal responds that Claim 1 of the '002 patent does not recite verbatim four phrases found in claim 1 of the '606 patent. Opp. at 7. But VoIP-Pal does not explain how any of those phrases "raise substantially different validity issues," let alone how they impact the outcome of the 101 analysis (or even whether those phrases would affect the analysis of Step 1 or Step 2 of *Alice*). And, in any event, the four phrases do have direct analogues—not identically worded, but substantially the same for purposes of eligibility and estoppel—and therefore do not raise substantially different validity issues:

| VoIP-Pal's Cited Phrase From '606 Claim 1 | Corresponding Limitation From '002 Claim 1 |
|---|---|
| [1] "the first and second participant devices being associated with first and second network elements of the communication system" | "in response to initiation of the communication by the first participant device, receiving, by a controller … a first participant identifier and a second participant identifier"<br>– The first network element that receives information "in response to initiation of the communication by the first participant device" must be "associated" (indeed, literally connected, directly or indirectly) with that first participant device in order to receive the information<br><br>"external network routing message causes the communication to the second participant device to be established using the gateway to the external network"<br>– The second network element (e.g., the gateway) must be "associated" (again, literally connected, directly or indirectly) with the second participant device in order to send messages to the second participant device. |
| [2] "processing the new second participant identifier, using the at least one processor, to determine whether the second network element is the same as the first network element" | "classifying the communication, based on the new second participant identifier, as a system communication or an external network communication"<br>– The system classifies (by processing) the communication as a "system communication" when the first and second network elements are the same; when they are different, the system classifies it as an "external network communication" |

| | |
|---|---|
| [3] "when the second network element is determined to be the same as the first network element, producing a routing message identifying a first network address associated with the first network element" and, relatedly, [4] "when the second network element is determined not to be the same as the first network element, producing a routing message identifying a second network address associated with the second network element" | "when the communication is classified as a system communication [because the first and second network elements are the same], producing a system routing message identifying an Internet address associated with the second participant device [which would be associated with the first network element, since the devices are on the same network]" "when the communication is classified as an external network communication [because the first and second network elements are not the same], producing an external network routing message identifying an Internet address associated with a gateway [which, as described in the first row above, is the second network element]" |

VoIP-Pal separately argues that collateral estoppel should not apply because the "allegations regarding the technology in [the complaint] in these cases are not the same as in the complaints in its prior cases."[1] This is irrelevant to the 101 analysis, which rests on the similarity between the claims.

VoIP-Pal next contends that it would be premature to rule on collateral estoppel because there are "numerous claim construction disputes" that may affect the Court's ruling. Opp. at 6. But VoIP-Pal has proposed "plain and ordinary meaning" for all disputed terms, so its proposals do not impact the 101 analysis (nor does VoIP-Pal identify any impact under Defendants' proposed constructions). *See* Dkt. 89 at 2. VoIP-Pal also contends that it would be premature to rule on 101 because the Court needs to "develops a full understanding of the claimed subject matter." Opp. at 6. VoIP-Pal does not identify what the Court could not understand in this case that prior district and appellate judges understood so as to rule on 101 issues regarding the same technology in largely identical patents.

Lastly, VoIP-Pal contends that it is not estopped from contesting ineligibility of other '606 claims because Claim 1 is not representative. But Claim 1 is indeed representative of the remaining claims. *See* § II.C, *infra*. Thus, if the Court finds that VoIP-Pal is estopped from contesting Claim 1's ineligibility, the remaining claims should also be ruled patent-ineligible.

---

[1] The declaration of Dr. Mangione-Smith does not substantively discuss the '002 patent at all and thus is irrelevant to the collateral estoppel analysis. *See generally* Dkt. 28-3 at 4–22. The new declaration of Dr. Oklobdzija is not part of the pleaded allegations and cannot be considered in the present procedural posture. *See Yakima Valley Mem'l Hosp. v. Wash. State Dept. of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011) ("Judgment on the pleadings is limited to material included in the pleadings.").

## II.      THE ASSERTED CLAIMS ARE PATENT-INELIGIBLE UNDER SECTION 101

### A.      *Alice* step one: Claim 1 is directed to the abstract idea of routing a communication based on the participants' characteristics.

#### 1.      Claim 1 uses broad, functional terms.

VoIP-Pal incorrectly contends that "Claim 1 relates to voice over IP [Internet Protocol] calling." Opp. at 8. To the contrary, Claim 1 recites a "packet switched communication system" generally, which encompasses IP networks and other packet-switched networks, and it recites only a general "communication," which encompasses both calling and non-calling communications (*e.g.*, calling, text messages, emails, messaging apps, etc.)[2]. It is precisely because Claim 1 is so generic and untethered from any particular technological improvement that it is abstract.

Contrary to VoIP-Pal's assertions, Defendants do not demand that Claim 1 contain the "how" to recite eligible subject matter (although that might have saved Claim 1). Claim 1 could have recited specific, inventive components required for implementation, as VoIP-Pal's cited cases show. *See Stormborn Techs., LLC v. Topcon Position Sys.*, 444 F. Supp. 3d 1119, 1125 n.3 (N.D. Cal. 2020) (holding a claim not abstract because it "***lays out the components needed*** to accomplish the claimed invention")[3]; *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305-06 (Fed. Cir. 2018) (claims not abstract where they "recite[d] ***specific*** steps … that accomplish the desired result."). But Claim 1 is written more generally. For example, as discussed above, it does not recite a specific communication type and instead purports to apply to ***all*** communication types. Claim 1's functional language is thus not tethered to any particular implementation, nor does it describe "how" to achieve the desired functionality across the breadth of technology within its scope, so it remains an abstract idea.

VoIP-Pal's reliance on *KPN* is also misplaced.[4] *See* Opp. at 9. The court in *KPN* held that:

> Absent sufficient recitation of *how* the purported invention improved the functionality of a computer, the "improvement" captured by those claims

---

[2] Defendants do not admit that the '606 patent contains written description support or enablement for claims directed to "communications" beyond calls.

[3] All emphasis is added unless indicated otherwise.

[4] The claims in *KPN* related to checking errors in data and were entirely dissimilar in substance to Claim 1 here, and VoIP-Pal does not contend otherwise. *See* 942 F.3d at 1147–48. The same is true regarding the claims in *Finjan*, which related to computer security software (*see* 879 F.3d at 1303), and the claims in *Stormborn*, which related to data control signals (*see* 444 F. Supp. 3d at 1124).

was recited at such a level of result-oriented generality that those claims amounted to a mere implementation of an abstract idea on a computer, not the specific way to improve the functionality of a computer.

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151–53 (Fed. Cir. 2019) (emphasis in original).'606 Claim 1 suffers from this same issue: It does not recite "*how* the purported invention improved the functionality" of prior art communication systems, so any alleged improvement is recited at such a level of result-oriented generality that it amounts to implementation of an abstract idea on an arbitrary communication system. VoIP-Pal contends that, per *KPN*, "the proper inquiry is whether the claim sufficiently recites how to achieve a specific improvement over prior art ***call*** routing systems, which it does—by using system configuration information including user profile information to route a communication to a destination." Opp. at 9. But as noted above, Claim 1 is not limited to call routing systems—it purports to apply to ***all*** communication systems. More importantly, the particular improvement VoIP-Pal points to ("using system configuration information including user profile information to route a communication to a destination," (Opp. at 9)) tracks almost exactly to what the *VoIP-Pal-2* court already found was an abstract idea. *See VoIP-Pal.com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 951 (N.D. Cal. 2019) ("The Court holds that the character of Representative Claim 1 is an abstract idea: the idea of routing a communication based on characteristics of the participants.").

## 2. Claim 1 is analogous to preexisting call routing practices.

VoIP-Pal's primary argument as to why Claim 1 is not analogous to pre-existing call routing practices is an attack on the holding of *VoIP-Pal-2*, which was affirmed on appeal. *See* Opp. at 10–11; *Voip-Pal.com, Inc. v. Apple, Inc.*, 828 F. App'x 717 (Mem) (Fed. Cir. 2020). VoIP-Pal is estopped from challenging the holding of that final judgment, and to the extent that VoIP-Pal asks the Court to disagree with that binding judgment, VoIP-Pal invites reversible error.

VoIP-Pal also contends that the allegations regarding the "history of call routing" in its First Amendment Complaint (FAC) are not evidence of "long-standing, well-known" practices. Opp. at 10. But a "history" is by definition a reflection of long-standing practices, so the allegations in the FAC can inform the Court's understanding of such practices. *See Hakopian v. Mukasey*, 551 F.3d 843, 846–47 (9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions").

3.      **Claim 1 uses only known technology to perform routine functions.**

VoIP-Pal contends that "Claim 1 recites specific limitations that improved existing call routing systems," but does not identify which "specific limitations" constitute such an improvement or how they represent otherwise unconventional technology. Opp. at 11. VoIP-Pal appears to suggest that the "specific limitations" it is relying on for the purported improvement are those that provide the ability to "route a call based on characteristics specific to the user." *Id.* But again, that is exactly the purported improvement that *VoIP-Pal-2* found was an ineligible abstract idea. *See* 411 F. Supp. 3d at 951.

VoIP-Pal also suggests that Claim 1 "recites specific improvements [relative to] prior art systems that only supported the dialing conventions of a local service area" (Opp. at 12) but does not explain how those alleged improvements actually tie to Claim 1, which is not limited to calling (because it recites "communications" more generally). This is the same argument that led the *VoIP-Pal-2* court to find the related claim in the '002 patent abstract because that claim, like Claim 1 here, is "not directed to this improvement" touted by VoIP-Pal. *See VoIP-Pal-2*, 411 F. Supp. at 960.

In sum, all three "themes" of § 101 jurisprudence indicate that Claim 1—as actually claimed, and not as recast in ways that appear only in VoIP-Pal's brief—is directed to an abstract idea, in exactly the same way that the substantially similar '002 patent was previously held to be so directed.

**B.      *Alice* step two: Claim 1 lacks an inventive concept.**

In considering both the individual elements and the elements as an ordered combination, VoIP-Pal relies on the same purported inventive concept, namely the "inventive concepts of user-specific communications handling and transparent routing, specifically the concept of using system configuration settings to transparently route communications between a plurality of geographically dispersed subscribers that rely for services on respective network elements of a distributed system." Opp. at 12–14. These purported inventive concepts cannot be found in Claim 1.

*"User-specific Communications Handling"/"User-specific Processing"*: VoIP-Pal does not tie this purported inventive concept to the elements actually recited in Claim 1. The relevant corresponding limitation, according to VoIP-Pal, is that "Claim 1 expressly requires that the users be associated with a network element of the communication system" (Opp. at 14). VoIP-Pal, however,

provides no explanation (either in its brief or in the cited portion of its FAC[5]) for why that particular association provides "user-specific processing," let alone provides it in an inventive way sufficient to save the claim under Step 2 of *Alice*. Thus, as in the prior case, VoIP-Pal's reliance on Dr. Mangione-Smith's declaration and the related allegations in the FAC are "orthogonal to the *Alice* inquiry" because "the evidence that aspects of the invention are not well-understood, routine, and conventional does not pertain to the invention **as claimed**." *See VoIP-Pal-2*, 411 F. Supp. at 974; *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018).

It is also unclear what type of "user-specific processing" VoIP-Pal attempts to rely on as providing an inventive concept. As background, in the traditional Public Switched Telephone Network (PSTN), the '606 patent admits that calls would be processed as long-distance versus local based on where the call participants were located (*see* '606 patent at 1:42–48: "The PSTN network **typically** includes … information about a **local** calling service area…."); so, from the perspective of the system, there have long been forms of "user-specific processing." Similarly, a caller in a PSTN would only be connected to the specific callee that the caller dialed and not connected at random to someone else, so there have also long been forms of "user-specific processing" from the perspective of the users. VoIP-Pal's "innovative concept" thus cannot be "user-specific processing." VoIP-Pal's inability to precisely articulate any inventive concept in "user-specific processing," let alone a concept that is tethered to the claim elements, is symptomatic of the underlying problem—Claim 1 has no inventive concept, regardless of whether one looks at the individual claim elements or their ordered combination.

*"Transparent Routing"*: Claim 1 does not require routing communications "transparently." If VoIP-Pal wanted to claim the purportedly inventive concept of "transparently" routing communications, it should have included it in the claims. *See Biovail Cor. v. Andrx Pharms.*, 239 F.3d 1297, 1301 (Fed. Cir. 2001) ("As a general proposition, a limitation that does not exist in a claim should not be read into that claim."). VoIP-Pal contends that "transparent" routing means routing "without the caller indicating how to route the call." Opp. at 14. Here, too, VoIP-Pal did not include this negative limitation. The same flaw arises with the other parts of the purported "transparent

---

[5] Paragraphs 32–38 of the FAC, per footnote 90 of the Opposition.

routing" inventive concept; in particular, Claim 1 does not recite any "system configuration settings," a "plurality of geographically dispersed subscribers," or a "distributed system." This is why VoIP-Pal's contention that the "FAC contains plausible and detailed allegations showing the claimed system *does not* operate using conventional techniques for routing" is incorrect (Opp. at 13, emphasis in original)—the cited paragraphs of the FAC[6] contain allegations regarding features that are not part of the ***claimed*** system, and therefore are not relevant.

VoIP-Pal relatedly argues that, in Claim 1 of the '606 patent, transparent routing emerges "by virtue of this association" between "users [and] a network element of the communication system," which VoIP-Pal contends is "different[] than in the claims in *VoIP-Pal II*." Opp. at 14. But as shown in the table in Section I above, the '002 patent claims in *VoIP-Pal-2* also recite an association between users and network elements. Specifically, the first network element in the '002 patent that receives information "in response to initiation of the communication by the first participant device" must be "associated" (literally connected, directly or indirectly) with that first participant device in order to receive the information; and the second network element (*e.g.*, the gateway) in the '002 patent must be "associated" (again, literally connected) with the second participant device in order to send messages to the second participant device. Thus, to the extent that one could even parse Claim 1 to encompass "transparent routing"[7] by virtue of users being "associated with a network element of the communication system" as VoIP-Pal contends (Opp. at 14), the same purported improvement would have existed in the non-inventive '002 patent.

**C.     Claim 1 is representative and no other asserted claim is patent-eligible.**

For purposes of analyzing patent eligibility, Claim 1 is representative for two reasons. *First*, the additional limitations found in the other claims do not change what their "character ***as a whole*** is directed to." *See Intellectual Ventures*, 850 F.3d 1332, 1338 (Fed. Cir. 2017). *Second*, even assuming that the additional limitations change what the claims as a whole are "directed to," those additional

---

[6] Paragraphs 30, 32, 33, and 35 of the FAC (Dkt. 28) and paragraphs 18-25 of Dr. Mangione-Smith's declaration (Dkt. 28-3), per footnote 87 of the Opposition.

[7] The portions of Dr. Mangione-Smith's declaration cited and quoted by VoIP-Pal do not actually "explain[ how] by virtue of this association [between users and network elements], the '606 claims achieve transparent routing." Opp. at 14.

limitations are themselves abstract and do not change the ultimate result. *See RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (combining abstract ideas is still abstract).[8]

Claims 3-6, 22, and 42, which include additional limitations regarding forwarding or blocking the communications established in Claim 1, exemplify Defendants' two-pronged approach to representativeness. As an initial matter, forwarding or blocking the communication established in Claim 1 has already been held to be part of the abstract process of routing the communication. *See, e.g.*, *VoIP-Pal-2*, 411 F. Supp. 3d at 966 (finding similar claims "directed to the abstract idea of routing a communication based on characteristics of the participants, where ***routing may include blocking the communication***"). Thus, these additional limitations do not change the outcome of the "directed to" analysis—the character of these claims as a whole is still directed to routing a communication based on the participants' characteristics, just like Claim 1 alone. As for VoIP-Pal's characterization of these and the other claims of the '606 patent as directed to "at least seven distinct concepts" (Opp. at 8), each purportedly materially different from Claim 1, it is not credible because "an issued patent may only cover ***one*** distinct invention." *See Yeda R&D v. Imclone Sys.*, 443 F. Supp. 2d 570, 606 n. 62 (S.D.N.Y. 2006); *Michaels of Or. v. Clean Gun*, 2002 WL 31496414, at *4 (D. Or. July 9, 2002).

Furthermore, even if these dependent claims could somehow be considered as "directed to" more than just routing and were further considered "directed to" the purportedly distinctive concepts of forwarding or blocking communications, such marginal differences would simply layer an additional abstract idea on the underlying abstract idea of Claim 1, which does not make the claim any less abstract. *See VoIP-Pal-2*, 411 F. Supp. 3d at 965 ("'[B]locking information' is no less abstract."); *Symantec Corp. v. Zscaler, Inc.*, 2018 WL 1456678, at *5 (N.D. Cal. Mar. 23, 2018) (holding as abstract a patent that "covers the concept of 'selectively ***passing forward*** file contents…'").[9]

---

[8] VoIP-Pal does not appear to contend that the additional limitations in the other claims impart an additional "inventive concept" beyond what is found in Claim 1, so there is no genuine dispute regarding representativeness for purposes of analyzing Step 2 of *Alice*. *See* Opp. at 3–6.

[9] VoIP-Pal argues that it alleged the additional limitations in these claims are "distinctive feature[s]," citing to paragraph 28 of the FAC. Opp. at 4 n.23. That citation (which appears to be a typo intended to reference paragraph 38 of the FAC) actually only includes allegations about what these claims "***enabled***" (which is a § 112 inquiry), ***not*** that they are ***directed to*** a "distinctive feature" for purposes of analyzing Step 1 of *Alice*; therefore, such allegations are irrelevant.

Regarding claims 14–15 and 26, VoIP-Pal contends that they are different from Claim 1 because, in those claims, "routing … is accomplished through a gateway, which is different from the routing to the second participant in Claim 1." Opp. at 4. But, as a threshold matter, there is no actual difference because Claim 1 encompasses routing through a gateway. Therefore, claims 14–15 and 26 cannot be "directed to" a different idea when Claim 1 also covers routing "accomplished through a gateway." Additionally, VoIP-Pal does not explain how "routing … through a gateway" would change the "directed to" analysis in a way that makes the claims any less abstract. Indeed, the parties agree that the claimed gateway is just a plain and ordinary gateway (*see* Dkt. 89 at 3), and the use of generic machinery does not make a claim less abstract. *See Twilio*, *Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1156 (N.D. Cal. 2017).

Regarding claims 8, 15, and 44, VoIP-Pal argues that they "recite a participant device in communication with a PSTN" (Opp. at 5), but that is not a relevant difference because Claim 1 does not exclude one of the participant devices from being a phone in communication with a PSTN. This additional limitation therefore does not change the "directed to" analysis. Nor does claim 8's further requirement of a "private network" change the "directed to" analysis, because Claim 1's packet-switched system encompasses private networks. These are all just immaterially narrower implementations of routing a communication based on the participants' characteristics that are all within the scope of Claim 1 and implemented with admittedly well-known hardware. *See* '606 patent at*, e.g.*, 1:42–44 (discussing "typical[]" PSTN).

Regarding claims 9, 27, and 32, even under VoIP-Pal's description, these claims are directed to routing a communication based on the participants' characteristics, specifically geographic characteristics in these instances. *See* Opp. at 5. These are all within the scope of Claim 1, which encompasses routing based on geographic characteristics. More generally, this geographic consideration does not change the "directed to" analysis, because routing based on participants' geographic characteristics is no less abstract than routing based on participants' other characteristics.

Lastly, regarding claims 19, 20, and 24, VoIP-Pal tries to fault Defendants for addressing the "*how* inquiry [which] relates to whether the claims are patent eligible, not whether Claim 1 is representative of these claims." Opp. at 5. VoIP-Pal misses the point of Defendants' argument. It is

precisely because these claims fail to address the "how" (*i.e.*, how load sharing is accomplished) that they cannot be deemed to be "directed to" anything more concrete than Claim 1, which is broad enough to encompass load sharing. Like Claim 1, these claims are still directed to routing communications based on participants' characteristics, just in a manner that permits load sharing.

## III.   DISMISSAL WITH PREJUDICE IS APPROPRIATE

Dismissal with prejudice is appropriate for the same reason that estoppel is appropriate—namely, no factual allegations could change the substance of the claims. The Federal Circuit has already held that substantially similar claims were ineligible in *VoIP-Pal-2*, and VoIP-Pal cannot circumvent that inevitable outcome here by adding factual allegations that would, in effect, merely allege that the Federal Circuit got it wrong on claims like these.

Moreover, the only allegations that VoIP-Pal seeks to add by way of amendment are not allegations of material fact but are instead unsupported opinions from new declarant Dr. Oklobdzija that would not change the outcome. VoIP-Pal first contends that Dr. Oklobdzija's declaration "provides relevant facts regarding the well-known call routing practices alleged in Defendants' Motion." Opp. at 14–15. Remarkably, VoIP-Pal does not cite to whatever "facts" Dr. Oklobdzija would provide regarding that issue nor does VoIP-Pal explain how those "facts" would affect the analysis. *Id.* VoIP-Pal further contends that the declaration "addresses Defendants' *how* questions, which implicate §112, not §101 issues" (*id.* at 15 (emphasis in original)); thus, by VoIP-Pal's own argument, those (uncited) portions of Dr. Oklobdzija's declaration are irrelevant to the 101 issues before the Court. And lastly, VoIP-Pal contends that the declaration "evidences that the claimed invention was not well-known, routine, or conventional," again without citing any "facts" in Dr. Oklobdzija's declaration that would actually bear on this issue. Opp. at 15. VoIP-Pal's proposed amendment is therefore futile, and Dr. Oklobdzija's *ipse dixit* legal conclusions regarding patent eligibility would not change the inevitable result. *See Glasswall Sols. Ltd. v. Clearswift Ltd.*, 754 F. App'x 996, 999 (Fed. Cir. 2018) (The conclusory "declaration of the alleged advantages in the claimed invention [] does not preclude dismissal on the pleadings.").

## IV.   CONCLUSION

The Court should grant Defendants' motion and dismiss these cases with prejudice.

DATED: March 27, 2023

Respectfully submitted,

PAUL HASTINGS LLP

*/s/ Matthias A. Kamber*
Matthias A. Kamber (SBN #232147)
matthiaskamber@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

Robert W. Unikel (*pro hac vice*)
robertunikel@paulhastings.com
John A. Cotiguala (*pro hac vice*)
johncotiguala@paulhastings.com
Matthew R. Lind (*pro hac vice*)
mattlind@paulhastings.com
Grayson S. Cornwell (*pro hac vice*)
graysoncornwell@paulhastings.com
PAUL HASTINGS LLP
71 S. Wacker Drive, Suite 4500
Chicago, Illinois  60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100

Robert R. Laurenzi (*pro hac vice*)
robertlaurenzi@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090

Ariell N. Bratton (SBN #317587)
ariellbratton@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive, 12th Floor
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

*Attorneys for Defendant Google LLC*

KIRKLAND & ELLIS LLP

*/s/ Joshua Glucoft*
Ellisen S. Turner (SBN #224842)
ellisen.turner@kirkland.com
Joshua Glucoft (SBN #301249)
josh.glucoft@kirkland.com
Kevin X. Wang (SBN #318024)
kevin.wang@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, 37th Floor
Los Angeles, CA 90067
Tel: (310) 552-4200
Fax: (310) 552-5900

Jeanne M. Heffernan (*pro hac vice*)
jheffernan@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Tel: (512) 678-9100
Fax: (512) 678-9101

Kristina R. Cary (*pro hac vice*)
kristina.cary@kirkland.com
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 385-7500
Fax: (617) 385-7501

*Attorneys for Defendants Meta Platforms Inc.
and WhatsApp LLC*

1

## __ATTESTATION__

2      Under Civ. Local Rule 5.1(h)(3) regarding signatures, I attest under penalty of perjury that

3   concurrence in the filing of this document has been obtained from counsel for Meta Platforms Inc. and

4   WhatsApp LLC.

5   DATED: March 27, 2023                          PAUL HASTINGS LLP

6                                              By: _/s/ Matthias A. Kamber_____
                                                   Matthias A. Kamber
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPENDIX 1**

| Claim 1 of US 10,218,606[10] | Claim 1 of US 9,826,002[11] |
|---|---|
| **1.** A method for routing communications in a packet switched communication system between a first participant device associated with a first participant and a second participant device associated with a second participant, the first and second participant devices being associated with first and second network elements of the communication system, respectively, the method comprising: | **1.** A method of routing a communication in a communication system between an Internet-connected first participant device associated with a first participant and a second participant device associated with a second participant, the method comprising: |
| *receiving*, by at least one processor, a second participant identifier associated with the second participant device, in response to initiation of a communication from the first participant device to the second participant device, the first participant device being associated with a first participant identifier; | in response to initiation of the communication by the first participant device, *receiving*, by a controller comprising at least one processor, over an Internet protocol (IP) network a first participant identifier and a second participant identifier, the second participant identifier being associated with the second participant device; |
| causing the at least one processor to access at least one memory storing a first participant profile *identifying* at least one first participant attribute; | causing the at least one processor to access a database comprising user profiles, using the first participant identifier, each user profile associating a respective plurality of attributes with a respective user, *to locate* a plurality of first participant attributes; |
| *processing* the second participant identifier and the at least one first participant attribute, using the at least one processor, to produce a new second participant identifier based on at least one match between the second participant identifier and the at least one first participant attribute; | *processing* the second participant identifier, using the at least one processor, based on at least one of the plurality of first participant attributes obtained from a user profile for the first participant, to produce a new second participant identifier; |
| *processing* the new second participant identifier, using the at least one processor, to determine whether the second network element is the same as the first network element; | *classifying* the communication, based on the new second participant identifier, as a system communication or an external network communication, using the at least one processor; |

---

[10] Dkt. 28-1 (Exhibit 1).
[11] *VoIP-Pal.Com, Inc. v. Apple Inc.*, No. 5:18-CV-06216-LHK, Dkt. 81 at 182-251 (Exhibit 3).

| **Claim 1 of US 10,218,606[10]** | **Claim 1 of US 9,826,002[11]** |
|---|---|
| when the second network element is determined to be the same as the first network element, ***producing*** a routing message identifying a first network address associated with the first network element, using the at least one processor; and | when the communication is classified as a system communication, ***producing*** a system routing message identifying an Internet address associated with the second participant device, using the at least one processor, wherein the system routing message causes the communication to be established to the second participant device; and |
| when the second network element is determined not to be the same as the first network element, ***producing*** a routing message identifying a second network address associated with the second network element, using the at least one processor; | when the communication is classified as an external network communication, ***producing*** an external network routing message identifying an Internet address associated with a gateway to an external network, using the at least one processor, |
| wherein the packet switched communication system attempts to establish the communication from the first participant device to the second participant device based on at least one network address identified in the routing message. | wherein the external network routing message causes the communication to the second participant device to be established using the gateway to the external network. |